## DECLARATION OF GUY GINO

I, Guy Gino, do hereby declare:

## INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since 2003. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am authorized by law to conduct investigations and to make arrests for felony offenses. I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon. Prior to this, I was employed as a U.S. Border Patrol Agent and have been a federal law enforcement officer since September 1996. I am authorized and assigned to investigate violations of federal laws, including 21 U.S.C. §§ 841(a)(1), 846, 848, and 843(b) of the Drug Abuse Prevention and Control Act of 1970; that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970. During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of conspiracy, money laundering, drug trafficking, fraud, smuggling, and theft. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered including through the use of computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other investigations. I am a Subject Matter Expert (SME) regarding the tracing of and use of cryptocurrency as part of money laundering schemes utilized by criminals to launder their illicit proceeds. As part of this area of expertise I have

created and conducted training on the use, and how to trace cryptocurrency to dozens of domestic and foreign law enforcement agencies since 2015. I have also provided expert testimony in trials regarding the illicit use of and the tracing of cryptocurrency in three occasions in the Districts of Utah, New Jersey and the Western District of Tennessee. I am currently detailed to the High Intensity Drug Trafficking Area (HIDTA) Interdiction Taskforce (HIT) located at the Portland Police Bureau's (PPB) Narcotics and Organized Crime (NOC) Unit.

2.  This declaration is submitted in support of the complaint seeking *in rem* forfeiture of $137,499.16 in U.S. currency.

3.  As set forth below, there is probable cause to believe, and I do believe, that the $137,499.16 is traceable to the proceeds of drug trafficking and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## SUMMARY OF INVESTIGATION

4.  Between May 2016 and May 2017, investigators responded to the overdoses of three individuals in Portland, Oregon, including two overdose deaths, all who ingested fentanyl purchased from Henry KOFFIE via darknet marketplace AlphaBay. KOFFIE used two different usernames, DNMKingpin and NarcoBoss. KOFFIE has been criminally charged with multiple counts of distribution of a controlled substance in violation of 21 U.S.C. § 841, and he is currently awaiting trial. (Or. USDC Case no. 3:17-cr-00291-MO).

5.  AV-1, a student at PSU, overdosed (non-fatal) on May 2, 2016. Officers learned that AV-1 had consumed alcohol and ingested fentanyl about 30 minutes prior to emergency services being called by her friends. Officers learned about the source of the

fentanyl and interviewed him. AV-1's fentanyl source informed investigators that he had supplied AV-1 with a vial of powder fentanyl that he bought on the dark web site AlphaBay, from a vendor using the moniker "DNMKingpin." AV-1's source gave law enforcement the packaging that the fentanyl had arrived in and provided investigators with additional fentanyl he still had in his possession. AlphaBay banned DNMKingpin before investigators could inquire further.

6. AV-2 fatally overdosed on May 6, 2017, after ingesting fentanyl. Officers learned that AV-2 and another roommate were ordering fentanyl and Xanax from the vendor NarcoBoss on the dark web site AlphaBay. NarcoBoss was advertising the fentanyl as pure China White. The roommate who was ordering fentanyl with AV-2 stated that he and AV-2 would usually split their order, but that AV-2 had started ordering fentanyl on his own using the roommate's name. The roommate told officers that he and AV-2 had ordered a gram of fentanyl from NarcoBoss for $40 that had arrived, via the mail to their address, on May 4, 2017. The drugs were sent via a USPS 8 ½" by 11" priority two-day shipping envelope. The roommate said that inside the larger outside envelope would be a plain white letter envelope that contained the white powdered fentanyl. The roommate said that the envelopes were always sent from a Pennsylvania address. The roommate also said that they paid for the fentanyl with bitcoin. The roommate told officers that he knew AV-2 had overdosed on that fentanyl because they had not yet completely consumed the gram they ordered. Analysis of AV-2's computer confirmed they had been purchasing fentanyl on AlphaBay from NarcoBoss.

7. On May 29, 2017, AV-3 fatally overdosed after ingesting fentanyl. Officers interviewed AV-3's roommates and learned that AV-3 had spent the night with a friend. That friend reported that they had drank some beer together and that AV-3 was alive at the time he

left in the early morning of May 29. One roommate reported that AV-3 had been "clean" for approximately the past six months and had recently started using drugs again. AV-3 had recently sent that roommate a text where AV-3 referred to purchasing powerful opioid. Officers from the Portland Bureau (PPB) seized and tested a small glass vial with white powder and a zip lock bag with white residue. Both tested positive for Furanyl Fentanyl. Investigators found a black notebook on a desk in AV-3's room with information related to accessing AlphaBay and a Bitcoin wallet. They also found an envelope addressed to AV-3 in the residence's trash with a return address in Philadelphia, Pennsylvania, that was a similar return address as on the packaging for AV-2.[1]

8. PPB Officers then conducted a series of five controlled drug buys in which they purchased fentanyl from the AlphaBay darknet vendor NarcoBoss and had the drugs shipped to an undercover U.S. Postal Box in Portland, Oregon. All five shipments contained white powder that tested positive for fentanyl.

9. Evidence shows that Henry KOFFIE is NarcoBoss:

- Two packages containing fentanyl seized in an unrelated Wisconsin investigation were consistent with the packages sent to AV-2 and AV-3 and had KOFFIE's fingerprints on envelopes that were within the packaging.

- Another package in a separate Pittsburg controlled buy from NarcoBoss had KOFFIE's fingerprints on the packaging.

---

[1] The return address for AV-1's package was Mike Bell, 210 Walnut Street, Darby, Pennsylvania. The return address for AV-2's package was Mike James, 940 Market Street, Philadelphia, PA. The return address for AV-3's package was Mike James, 940 Market Street, Philadelphia, PA.

**Declaration of Guy Gino**  EXHIBIT A  PAGE 4
Complaint *In Rem*
FOR FORFEITURE

- KOFFIE's Coinbase and LocalBitcoins ("LBC") accounts funded the online postage service used to purchase the postage for the parcels NarcoBoss sent to AV-2, AV-3, the five controlled buys conducted by Portland law enforcement officers, the intercepted parcels in Wisconsin, and the controlled buy conducted by Pittsburgh investigators. KOFFIE even uploaded a picture of his driver's license to his Coinbase account.

- AlphaBay records also show that on February 14, 2017, NarcoBoss sent bitcoin to KOFFIE's LocalBitcoins account.

10. KOFFIE imported the fentanyl from China to his mother's residence. Between April 6, 2016, and May 23, 2017, KOFFIE, using his true name, received 14 packages (totaling about seven kilograms) at his mother's home in Darby, Pennsylvania, from known Chinese and Hong Kong based fentanyl distributors. These packages were manifested as mundane items such as "Headwear," "Shirt," "Accessories," and "Toner." In May and June 2017, unrelated to the investigation of the KOFFIE, CBP Officers identified and detained two additional parcels that were being shipped from Chinese companies known to be involved in the mailing of controlled substances. Both parcels were addressed to KOFFIE at his mother's residence and manifested as "Commercial Sample." Parcel 1 contained approximately 253 grams of a white powder. Parcel 2 contained approximately 252 grams of a white powder. The powder in both parcels tested positive for fentanyl.

11. During my review of AlphaBay data for the NarcoBoss account, I was able to identify that the account had 6,615 confirmed sales. All sales were for product listings identified as "China White Synthetic Heroin Fentanyl Mix (3)" in different quantities.

**Declaration of Guy Gino**  EXHIBIT A   PAGE 5
Complaint *In Rem*
FOR FORFEITURE

12. The records also showed that the NarcoBoss account had 320 withdrawals from AlphaBay to the user's external Bitcoin address. The AlphaBay administrator had deleted the destination Bitcoin address for all but one transaction, but the dates and amounts remained for all transactions. The one address that received a payment occurred on February 14, 2017, where 2.28353964 BTC was sent to 18vWC*****qMskq and was captured on the Bitcoin blockchain as transaction ID 9d91b*****47f8d.

13. I used a blockchain exploitation tool, which identified that transaction ID was received by an address belonging to the online Bitcoin exchange LocalBitcoins.

14. I obtained data from LocalBitcoins ("LBC") and identified that KOFFIE's LBC account was created on October 14, 2014, and it had received a total of 1,605 transactions totaling 501.2293 BTC.

15. The data also indicated that KOFFIE had sent 83.2057 BTC to external Bitcoin addresses as well as sold approximately 422.6281 BTC using the platform.

16. I know from my training and experience that LBC not only functions as a mechanism to receive and send bitcoin but allows its users to conduct sales of their bitcoin (also referred to as trades). To conduct a trade a user needs to place an ad on the site and provide their "terms" for the specific trade. The terms include the rate of exchange, the manner for the seller to receive the item being traded. In the case of trades involving fiat currency, the seller will indicate whether they want the funds to be mailed, deposited at a bank branch, receive an ACH wire transfer, etc. The buyers for cryptocurrency also are required to place ads informing that they will purchase the bitcoin and at what exchange rate, their terms, etc. LBC would act as an escrow party between the seller and the buyer during these trades to ensure that each party honored their part of the trade agreement.

17. During my review of the LBC data, I identified that KOFFIE was assigned 239 Bitcoin addresses to receive external transactions. In reviewing these addresses, I was able to identify that 18vWC*****qMskq was assigned to KOFFIE.

18. I further identified that according to the LBC records, on February 14, 2017, KOFFIE's LBC account received twenty-one transactions totaling 2.2271 BTC into KOFFIE's assigned Bitcoin address 18vWC*****qMskq. One of those transactions shared the transaction ID 9d91b*****47f8d. These transaction details match the payment transferred from NarcoBoss's account on AlphaBay to LBC.[2]

19. I compared KOFFIE's LBC account for bitcoin received to the Narcoboss AlphaBay account for bitcoin sent, and the amounts and dates of transactions matched.

20. From April 1, 2017, to June 21, 2017, NarcoBoss's AlphaBay account directly sent KOFFIE's LBC account 30.66719 BTC. KOFFIE's LBC account received an additional 260.1603 BTC indirectly from AlphaBay, meaning the bitcoin transferred through one or more intermediary Bitcoin addresses before arriving at KOFFIE's LBC account. The bitcoin moved from AlphaBay to the intermediary addresses and then to KOFFIE's LBC account almost instantaneously.

21. I reviewed KOFFIE's LBC trades and observed that he conducted thirty-five sales of bitcoin to eighteen LBC users. Thirty of these trades were KOFFIE selling bitcoin in

---

[2] I know that from my training and experience that AlphaBay would split withdrawals between multiple transactions at the same time, which would create the 21 separate transactions I observed being received by KOFFIE's LBC account. I also am aware that as part of the confirmation process a Bitcoin transaction will lose a fraction of its value which is like a transaction fee paid for the transaction's verification. Therefore, I believe that the 2.2271 BTC received by KOFFIE's LBC Bitcoin addresses represents the 2.28353964 AlphaBay sent to NarcoBoss on February 14, 2017.

exchange for cash deposits into his bank account. I matched these trades to counter-cash deposits into KOFFIE's TD Bank accounts.

22. Five of these trades were KOFFIE selling bitcoin in exchange for bank transfers. I matched each of these trades to wire transfers into KOFFIE's TD Bank accounts, as explained below. These five trades totaled 155.8184929 BTC. These trades were funded by direct and indirect transfers of bitcoin from AlphaBay.

## KOFFIE'S TD BANK ACCOUNTS

23. Investigators obtained a search warrant to search of KOFFIE's apartment at 216 Walnut Street, 2nd Floor, Darby, Pennsylvania. During this search, investigators found financial paperwork showing that Henry K KOFFIE had TD Bank accounts ending in 0127 and 2546.

24. Records obtained from TD Bank shows that KOFFIE had five bank accounts at TD Bank, but one had been closed prior to the seizure and was largely inactive in the months leading up to the seizure. Only the following four are relevant here:

   i. business checking account ending in 0127 (hereafter "TD-0127") in the name of Henry Koffie LLC, with the Walnut Street address;

   ii. business savings account ending in 5189 (hereafter "TD-5189) in the name of Henry Koffie LLC, with the Walnut Street address;

   iii. personal checking account ending in 2546 (hereafter "TD-2546") in the name of Henry K Koffie, with the Walnut Street address; and

   iv. personal savings account ending in 2558 (hereafter "TD-2558") in the name of Henry K Koffie, with the Walnut Street address.

25. On July 7, 2017, Judge Paul Papak issued a warrant (17-MC-308) for KOFFIE's TD Bank accounts, which was served on the same day. TD Bank produced a check in the amount of $137,499.16, which is the sum of the balances of the above four bank accounts on that date.

26. **TD-0127**: Bank records show we seized $26,192.56 from this account. I was able to trace these funds to criminal proceeds. On May 11, 2017, KOFFIE conducted a trade on LBC. In this trade, KOFFIE sold 80.93655152 BTC for $140,000. That same day, TD-0127 received a $140,000 wire transfer from an individual with the initials BBW.[3] The balance in the account prior to this transfer was $200. That same day, KOFFIE transferred $125,000 to TD-5189, leaving $15,000 of the original $140,000 in the account. KOFFIE then spent or transferred out nearly all of the $15,000.

27. However, KOFFIE continued to receive wire transfers into TD-0127. In June 2017, KOFFIE received four wire transfers:

- June 9, $50,000 from an LLC with the words "Coin Trading" in it;
- June 9, $35,000 from an LLC starting with J;
- June 9, $20,000 from an LLC with "Vending Machines" in the name; and
- June 26, 2017, $92,000 from an LLC with initials JJU.

28. Each of these four wire transfers match with KOFFIE's trades on LBC in both amount and date. KOFFIE made no additional deposits to the account, so the account was entirely funded by the above-described wire transfers plus an opening balance of $200.

---

[3] Because the identities of KOFFIE's trading counterparties on LBC are not relevant to the tracing analysis, we attempted to anonymize their identities as much as possible.

29. KOFFIE then made significant debits (source not identified on bank statements) and two transfers to TD-2546: $15,000 on June 20 and $10,000 on June 27, 2017.

30. The balance seized on July 7, 2017, was $26,192.56. Based on the above facts, I believe this amount is entirely criminal proceeds from AlphaBay to LBC to TD Bank.

31. **TD-5189**: Bank records show we seized $107,509.83 from this account. The opening balance on this account was $501.49. On May 11, 2017, as described above, KOFFIE transferred $125,000 from TD-0127 to TD-5189, which was proceeds from the LBC transaction with BBW. KOFFIE made no additional deposits to the account, so the account was entirely funded by the $125,000 transfer plus an opening balance of $501.49.

32. KOFFIE made two transfers of $4,000 each, one to TD-2558 and one to TD-2546, and a $10,000 withdrawal. The closing balance was $107,509.83, which we seized. Because these funds are traced from the LBC transaction, I believe they are entirely criminal proceeds.

33. **TD-2546**: Bank records show we seized $2,193.18 from this account. KOFFIE made two transfers from TD-0127 to this account: $15,000 on June 20 and $10,000 on June 27, 2017. These transfers were funded by the four wire transfers linked to LBC transactions.

34. Based on the nature of debits and transactions on this account, it appears to have acted as KOFFIE's primary checking account. Therefore, there are numerous debits of various amounts to retailers. The closing balance at seizure was $2,193.18, which is entirely traceable to criminal proceeds.

35. **TD-2558**: Bank records show we seized $1,603.47 from this account. The account had $2,600 in it on June 1, 2017. On June 2, KOFFIE transferred $4,000 to this account from TD-5189, which was funded by the proceeds of the LBC transaction with BBW. He

subsequently transferred a total of $5,000 to TD-2546. Based on the lowest intermediate balance rule, the funds that remain in the account are still proceeds (between the deposit of proceeds and the seizure, the balance never went below the amount seized, so the funds are considered all proceeds).

36. In total, we seized $137,499.16 from KOFFIE's TD Bank accounts.[4] As set forth above, there is probable cause to believe, and I do believe, that the $137,499.16 seized from KOFFIE's TD Bank accounts represents proceeds of KOFFIE's drug trafficking and is therefore also subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

37. I have presented this declaration to Assistant United States Attorney Julia Jarrett, and she has advised me that, in her opinion there is probable cause to forfeit the above-mentioned seized property.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 15th day of February 2023.

*/s/ Guy Gino*
Guy Gino, Special Agent
Homeland Security Investigations

---

[4] Adding up the individual accounts, the total is $137,499.04. There may have been some interest earned that was not reflected on the bank statements, accounting for the $0.12 difference.

**Declaration of Guy Gino**  EXHIBIT A   PAGE 11
Complaint *In Rem*
FOR FORFEITURE